

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

P. Michael Cunningham
Assistant United States Attorney
michael.cunningham@usdoj.gov

Suite 400
36 S. Charles Street, 4th Floor
Baltimore, MD 21201

Direct: 410-209-4884
Main: 410-209-4800
Fax: 410-962-3091

February 12, 2020

Via email:
tbarnard@bakerdonelson.com

Thomas H. Barnard, Esquire
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
100 Light Street
Baltimore, MD 21202

    Re:   *United States v. Michael Grayson*
           Criminal No. GLR-17-0480

Dear Mr. Barnard:

    This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Michael Grayson (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by February 19, 20120, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense(s) of Conviction

1.    The Defendant agrees to plead guilty to Count Two of the Superseding Indictment which charges him with Visa Fraud, in violation of 18 U.S.C. § 1546(a). The Defendant admits that he is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offense

2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland:

    a.    The Defendant knowingly made a false statement;

    b.    The Defendant's false statement was made under oath; and

c. The Defendant's false statement was material to a document required by the immigration laws or regulations prescribed thereunder.

## Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 2 | 18 U.S.C. § 1546(a) | NA | 10 yrs | 3 yrs | $250,000 | $100 |

    a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due. *The government does not recommend a fine in this case.*

    e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.   The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a.   If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b.   If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c.   If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d.   The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose; and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e.   If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f.   By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.  This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

a.  This Office and the Defendant further agree that the applicable base offense level is 11, pursuant to United States Sentencing Guidelines ("USSG") § 2L2.1.

b.  There is a three (3) level increase because the defendant sought to fraudulently obtain more than 6 and less than 24 documents, pursuant to USSG § 2L2.1(b)(2)(A).

c.  There is a two (2) level reduction for the Defendant's role pursuant to USSG § 3B1.2(b).

d.  This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant:

(i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

   c. The adjusted offense level is ten (10).

7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Obligations of the Parties

9. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, ~~and/or fine~~ considering any appropriate factors under 18 U.S.C. § 3553(a). This Office agrees to not seek the imposition of a fine. This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

   b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including

Rev. August 2018

5

the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: the Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

      c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Defendant's Conduct Prior to Sentencing and Breach

11. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

12. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

13. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding

Rev. August 2018

prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

14. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: _____
P. Michael Cunningham
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10-2-2020
Date

Michael Grayson

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

10-2-2020
Date

Thomas H. Barnard, Esq.

Rev. August 2018

7

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Michael GRAYSON ("GRAYSON"), age 53, currently resides in Ijamsville, Maryland.

Co-defendant Ke "Jack" ZHANG ("ZHANG") and his then wife, co-defendant Juliet LUO ("LUO"), became the subjects of an investigation in 2013. Specifically, Immigration and Customs Enforcement ("ICE") received information that ZHANG and LUO used their business, Caervision, to facilitate fraud in the Immigrant Investor Program ("EB-5" visas). The initial information indicated that beginning as early as 2009 and extending until Zhang left the business in late 2015, he and LUO enlisted wealthy Chinese nationals to give money to Caervision and/or one of approximately 27 different limited liability corporations ("LLCs," also called Joint Ventures, "JV")), in order to acquire EB-5 visas. Later in the scheme, as it became apparent that the applications for EB-5 visas were not being approved, they solicited foreigners to pay them money for L-1 and H1-B visas. In all cases, there were fraudulent representations made to United States Citizenship and Immigration Services ("USCIS") about the applicant's status and his/her qualification for the respective visa.

The Immigrant Investor Visa Program, also known as the "EB-5 Visa Program," was created by Congress in 1990 to stimulate the U.S. economy through job creation and capital investments made by immigrant investors in new commercial enterprises or troubled businesses. The EB-5 Visa Program is administered by USCIS. In order to qualify, the immigrant must make a capital investment of $1,000,000, or if the investment is in a Targeted Employment Area ("TEA") located within the United States, a capital investment of $500,000. The investment must create or preserve 10 full-time jobs for qualifying United States workers within two years. To qualify as an EB-5 investment, the immigrant investor must actually place his or her capital "at risk" for the purpose of generating a return and evidence of such risk must accompany the EB-5 petition. If the immigrant investor is guaranteed the return of a portion of his or her investment, then that portion of the capital is not at risk.

ZHANG and LUO created many JVs in partnership with Caervision, over which they exercised control of business and financial operations. Myriad different bank accounts were set up for each of the JVs and ZHANG and/or LUO exercised sole authority over the disbursement of funds in those accounts. While Caervision was located in Urbana, Maryland, the JVs were located in Johnstown, PA, a TEA, where a $500,000 investment would suffice to meet EB-5 requirements.

GRAYSON was originally a contractor hired by Jack ZHANG and Juliet ZHANG (hereinafter Jack or Juliet) to work at Caervision in April 2012. GRAYSON had been working at an accounting firm called BMC when he was hired to help Caervision organize their

accounting. GRAYSON began working at Caervision as a 1099 contract employee with no internal role at Caervision.

Approximately 9 months later, he began working at the company. He has always received a 1099 for his pay not a W2. Jack KE ZHANG ("ZHANG") was GRAYSON's direct supervisor until he left Caervision in December 2015; then GRAYSON reported to Juliet LUO ("LUO"). Initially, GRAYSON was the Vice President for Technology and Operations until the Caervision's Chief Operating Office (COO) Tina BERGER resigned. In June or July 2015, GRAYSON learned via an office-wide email from ZHANG that was made the COO.

Instead of establishing viable businesses that would employ the requisite number of workers and function as the EB-5 program intended, ZHANG and LUO essentially operated a shell game with the monies invested by numerous Chinese nationals and the people who were employed by Caervision. Money was routinely moved among bank accounts to create the appearance of going business operations. The employees of Caervision, as well as those few employees actually employed by a JV, found that their paychecks were routinely issued from one of the many different JV or Caervision accounts, without regard to what company the employee actually worked. This was done to create the false impression that the JVs were employing sufficient number of workers to qualify for EB-5 visas. From 2009 until Zhang left Maryland and the company in about 2015, ZHANG and LUO actively participated in the scheme to fraudulently obtain EB-5 visas based on countless false representations to USCIS as well as the investors on whose behalf applications were submitted. ZHANG and LUO would represent to the investors that if their visa applications were not approved, in accordance with the terms of their agreements with ZHANG and LUO and the JV Agreements they entered, part or all of their investments would be returned, in contravention of the EB-5 program requirement that all investments be "at risk."

Typically, Chinese nationals intent on applying for a visa were required to transfer by wire, at least $500,000 for purposes of the "investment" into the business as well as an additional amount for attorneys' and other fees. Many wire transfers of funds were made from accounts in China to bank accounts in the United States. Thereafter, ZHANG and LUO would redirect funds as necessary to create the appearance that "investments" had been made into qualifying businesses which were going concerns employing United States and foreign citizens. ZHANG and LUO also redirected funds by wire transfers into accounts for their personal benefit.

Although USCIS initially approved one (1) of the EB-5 applications submitted by ZHANG and LUO on behalf of their Chinese investor clients, even that approval was later rescinded. All other EB-5 visa applications submitted by ZHANG and LUO on behalf of their Chinese investor clients were denied. As a result of these denials, the scheme migrated to submission of applications for L-1 and H-1B visas. As with the EB-5 investor visa fraud, the applications contained numerous material false representations, and the contractual agreements between "clients" in China, and ZHANG and LUO violated specific provisions of the respective visa programs.

'On numerous occasions during the course of his employment, GRAYSON would sign immigration and visa related documents in the names of individuals – typically Chinese

Nationals – who were the applicants for and/or affiliated with one or more of the businesses related to the scheme to fraudulently obtain visas. GRAYSON knew he was signing documents that contained false representations that would be presented to United States agencies responsible for adjudication said visa applications. Specifically, on or about February 8, 2016, GRAYSON, along with co-defendant LUO, made and submitted to United States Citizenship and Immigration Service, a USCIS Form I-129, Petition for a Nonimmigrant Worker, in which they falsely represented that Zhengzhou Sungod Decoration Engineering Company had acquired an interest in AA Medica and was sending a Chinese National employee to work on its behalf in the United States. GRAYSON as well as LUO knew that this was a false statement because the Chinese national on whose behalf the I-179 was filed was not being sent to the United States to work at AA Medica on behalf of the Zhengzhou Sungod Decoration Engineering Co.

SO STIPULATED:

*[signature]*
P. Michael Cunningham
Assistant United States Attorney

*[signature]*
Michael Grayson
Defendant

*[signature]*
Thomas H. Barnard, Esquire
Counsel for Defendant